IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LISA M.,

                            Plaintiff,                        Civil Action No.
                                                                5:19-CV-0764 (DEP)

      v.

ANDREW M. SAUL, Commissioner of Social
Security,

                            Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM     PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH         RONALD MAKAWA, ESQ.
United States Attorney             Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

     Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on June 23, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

---

[1]   This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      June 29, 2020
            Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x
LISA M.,

                         Plaintiff,

vs.                                  3:19-CV-764

ANDREW M. SAUL, COMMISSIONER OF
SOCIAL SECURITY,


                         Defendant.
--------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on June 23, 2020, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

              A P P E A R A N C E S

                (By Telephone)

For Plaintiff:       LACHMAN, GORTON LAW FIRM
                     P.O. Box 89
                     1500 E. Main St.
                     Endicott, New York  13761-0089
                       BY:  PETER A. GORTON, ESQ.

For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     Office of the General Counsel
                     JFK Federal Building, Room 625
                     15 New Sudbury Street
                     Boston, Massachusetts 02203
                       BY:  RONALD MAKAWA, ESQ.


              *Jodi L. Hibbard, RPR, CSR, CRR*
           *Official United States Court Reporter*
                 *100 South Clinton Street*
              *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1              (The Court and counsel present by telephone.)

2              THE COURT:  I have enjoyed working with you on this

3    case and appreciate the excellent written and oral

4    presentations by counsel.

5              Plaintiff has commenced this proceeding pursuant to

6    42 United States Code Sections 405(g) and 1383(c)(3) to

7    challenge an adverse determination by the Commissioner of

8    Social Security, finding that plaintiff was not disabled at

9    the relevant times and therefore ineligible for the benefits

10   for which she's sought.

11             The background is as follows:  Plaintiff was born

12   in January of 1974 and is currently 46 years of age.

13   Plaintiff was 40 years old at the alleged date of the onset

14   of her disability on September 1, 2014, and 44, if I can read

15   my notes correctly, at the time of the administrative law

16   judge's decision in August of 2018.  Plaintiff is 5 foot --

17   5 feet tall in height and weighs 118 pounds.  She is divorced

18   and rents a room in a house in Endicott, New York.  The

19   record is equivocal as to whether she previously lived with a

20   boyfriend.  There's a suggestion at Dr. Shah's notes that she

21   did and that she was moving out on her own, page 370, and in

22   October 2016 there's an indication on 384 that she was living

23   with her boyfriend.  She denied it, however, at the time of

24   the hearing.

25             Plaintiff has a GED.  The record is again equivocal

as to whether she attended regular or special education classes. In her function report at 177 she indicated regular classes. At page 291 she told Dr. Shah that she was in special education. Plaintiff has one semester of post-high school education in the field of criminal justice. She also underwent tax preparation training. Plaintiff is right-handed. She has a driver's license but no vehicle. Plaintiff stopped work on September 1, 2014. According to her hearing testimony at page 43 she was fired after a disagreement with a supervisor. As the administrative law judge noted, plaintiff has a somewhat sporadic employment history that consists of working in various positions including as a tax preparer, an electronics recycle facility, a cashier and a stock person at several places, mostly could be described as convenience stores, and as a pizza and sub preparation and cook.

Physically plaintiff suffers from several diagnosed impairments including neck pain and cervicalgia. There is an indication at page 242 of the administrative transcript she was diagnosed with Lyme disease. She experiences numbness, tingling, pain in her legs, feet swelling, peripheral neuropathy, plantar callous lesions which were excised in March of 2017, and a left foot fracture of a foot bone, the fifth phalanx bone. She also had laser ablation in November of 2017 for the plantar callous lesions.

1        Mentally plaintiff suffers from history of

2   marijuana and crack cocaine abuse.  She has apparently

3   maintained sobriety since sometime around 2011.  She has been

4   diagnosed with various other mental conditions including

5   bipolar II disorder, post-traumatic stress disorder,

6   agoraphobia with panic disorder, personality disorder, and

7   major depression or major depressive disorder.  Plaintiff's

8   mental conditions have been tied, or the suggestion is that

9   they stem from when her husband left her, although she also

10  had some traumatic events earlier, including the fact that

11  her mother died when she was nine years old and that she was

12  sexually abused by her brother, according to 291 of the

13  administrative transcript.

14        In terms of health care providers, plaintiff sees

15  Physician's Assistant Gina Callahan and has since 2013,

16  neurologist Dr. Taseer Minhas, and podiatrist Dr. Angela

17  Freeman.  For her mental needs she sees psychiatrist Dr. Arun

18  Shah and has since February 2015.  She sees Dr. Shah

19  approximately every three months.  She also treats weekly

20  with Therapist Jessica Netherton.  The record includes a

21  medical source statement from Dr. Shah given in May of 2018,

22  a medical source statement from Dr. Freeman from April 30,

23  2018, a report of a consultative examination by Dr. Gilbert

24  Jenouri from March 31, 2016, and opinions from Dr. A.

25  Chapman, a psychologist, nonexamining psychologist from March

1    of 2016.

2              In terms of medications, plaintiff has been

3    prescribed Klonopin, Prozac, Zyprexa, Seroquel, BuSpar,

4    Abilify, and Chantix.

5              Plaintiff has a fairly wide range set of activities

6    of daily living.  She is able to shower, dress, and groom.

7    She cooks, cleans, does dishes, does laundry, shops one time

8    per month, takes care of 50 house plants.  She is able to

9    visit her son in prison, she watches television, she does

10   puzzles, and reads books.  Plaintiff is a smoker.  She smokes

11   between 10 and 19 cigarettes per day, according to pages 240

12   and 393 of the administrative transcript.

13             Procedurally, plaintiff applied for Title II and

14   Title XVI benefits under the Social Security Act on

15   January 15, 2016, alleging an onset date of September 1,

16   2014.  In her function report at page 176 she claimed

17   disability based on bipolar disorder, PTSD, Lyme disease,

18   agoraphobia with panic disorder, swollen hands and feet,

19   joint swelling from Lyme disease.  At the hearing when asked

20   about her ability to work, she cited mental health

21   impairments including agoraphobia and left foot issue, at

22   pages 43 and 44, as preventing her from performing

23   work-related functions.

24             On June 21, 2018, a hearing was conducted by

25   Administrative Law Judge Robert A. Lynch to address

1    plaintiff's application for benefits.  ALJ Lynch issued an

2    unfavorable decision on August 15, 2018.  That became a final

3    determination of the agency on May 3, 2019 when the Social

4    Security Administration Appeals Council denied plaintiff's

5    request for review.  This suit was filed on June 27, 2019 and

6    is timely.

7                In his decision, ALJ Lynch applied the familiar

8    five-step test for determining disability.

9                At step one, after first determining that plaintiff

10   was last insured on September 30, 2017, he concluded

11   plaintiff had not engaged in substantial gainful activity

12   since September 1, 2014.

13               At step two, ALJ Lynch concluded the plaintiff does

14   suffer from impairments that impose more than minimal

15   limitations on her ability to perform basic work functions,

16   including mental impairments variously described as both

17   bipolar II disorder, post-traumatic stress disorder,

18   agoraphobia with panic disorder, and personality disorder, as

19   well as, from a physical standpoint, neck pain and

20   cervicalgia and right eye vision loss.

21               At step three, ALJ Lynch concluded that plaintiff's

22   conditions do not meet or medically equal any of the listed

23   presumptively disabling conditions set forth in the

24   Commissioner's Regulations, specifically considering Listings

25   1.02, 2.02, 12.04, 12.06, 12.08, and 12.15.  The mental

1   listings were not deemed to have been met since plaintiff did

2   not satisfy either the B or C criteria under those particular

3   listings.

4           ALJ Lynch then determined that plaintiff, despite

5   her impairments, was, retains the residual functional

6   capacity, or RFC, to perform light work with limitations that

7   are specified at pages 21 and 22.  Specifically he concludes

8   that plaintiff can lift 20 pounds occasionally and 10 pounds

9   frequently and can stand and/or walk for cumulative total of

10  six hours during an eight-hour workday with ordinary breaks

11  and can sit for a cumulative total of up to eight hours

12  during an eight-hour workday, again, with ordinary breaks.

13  She can occasionally climb ramps and stairs but can never

14  climb ladders and scaffolds.  She can occasionally stoop,

15  kneel, and crouch, but can never crawl and can never work in

16  unprotected heights.  She cannot perform work that requires

17  her to use upper extremities to reach, handle, finger, or

18  feel on more than a frequent basis.  She cannot perform work

19  that requires fine near visual acuity such as assembling very

20  small parts.

21          From a mental standpoint, the RFC finding is that

22  she can perform work that includes moderately complex tasks,

23  further defined as work with an SVP of 4 or less in an

24  environment that does not require interactions with the

25  public and requires no more than occasional and superficial

1    interaction with coworkers and supervisors.

2              Applying that RFC finding, Administrative Law Judge

3    Lynch concluded that plaintiff is indeed capable of

4    performing her past relevant work either as performed by the

5    plaintiff or generally as performed.

6              At step five, ALJ Lynch first noted that if

7    plaintiff could perform a full range of light work, a finding

8    of no disability would be directed by the Vocational

9    Guidelines set forth, or Grids, in the Commissioner's

10   Regulations, and specifically Grid Rule 202.21.

11             Based on the testimony of a vocational expert and a

12   hypothetical posed to that vocational expert, the

13   administrative law judge concluded that notwithstanding the

14   additional nonexertional limitations, plaintiff is capable of

15   performing work in the national economy as a swatch clerk, a

16   packing header, and a blade balancer, and therefore concluded

17   that plaintiff was not disabled at the relevant times.

18             As you know, the standard that the court must apply

19   is extremely deferential.  I must determine whether

20   substantial evidence supports the determination of the

21   Commissioner and whether correct legal principles were

22   applied.  The Second Circuit noted in *Brault v. Social*

23   *Security Administration Commissioner*, 683 F.3d 443, that this

24   is an exacting standard, more rigorous than the clearly

25   erroneous standard.  Substantial evidence, of course, is well

1    defined as such relevant evidence as a reasonable mind might

2    accept as adequate to support a conclusion.  The court also

3    noted in *Brault* that the substantial evidence standard means

4    that once an ALJ finds facts, they can be rejected only if a

5    reasonable fact finder would have to conclude otherwise.

6          In this case, plaintiff has raised several

7    contentions, challenging both the physical and mental

8    components of the residual functional capacity finding as

9    lacking in support by substantial evidence, and drilling

10   down, plaintiff challenges the administrative law judge's

11   rejections of opinions from two treating sources, Dr. Shah

12   from a mental point of view and Dr. Freeman, the treating

13   podiatrist.  And more generally, the challenge, she

14   challenges the weighing of medical opinions concerning

15   attendance, scheduling, ability to respond to supervisor

16   criticism, off task and absenteeism, and then of course she

17   contends that these errors infected the RFC and therefore the

18   step five reliance on vocational expert testimony.

19         The administrative law judge, as he was required to

20   do, formulated an RFC.  As you know, claimant's RFC

21   represents a finding of the range of tasks she is capable of

22   performing, notwithstanding her impairments at issue.  An RFC

23   determination is informed by consideration of all of the

24   relevant medical and other evidence as spelled out in 20

25   C.F.R. Sections 404.1545(a)(3) and 416.945(a)(3).  The

1    matter's also addressed by the Second Circuit in *Tankisi v.*
2    *Commissioner of Social Security*, 521 F.App'x. 29 from 2013.
3    To properly ascertain an RFC, an ALJ must assess plaintiff's
4    exertional capabilities, as well as nonexertional limitations
5    or impairments.  When rendering an RFC determination, the ALJ
6    must specify those functions that claimant is capable of
7    performing without conclusory statements, and of course the
8    RFC determination must in the end be supported by substantial
9    evidence.
10           In this case, the real nub is plaintiff's treating
11   source argument.  Ordinarily of course the opinions of
12   treating source regarding the nature and severity of an
13   impairment is entitled to considerable deference if it is
14   supported by medically acceptable clinical and laboratory
15   diagnostic techniques and is not inconsistent with other
16   substantial evidence.  Such opinions are not controlling,
17   however, if they are contrary to other substantial evidence
18   in the record, including the opinions of other medical
19   experts.  And where the record includes contradictory medical
20   evidence, resolution of such contradictions or conflict is
21   properly entrusted to the Commissioner.  The treating source
22   rule really presents a two-step analysis.  First the
23   determination must be made as to whether controlling weight
24   is going to be given to the opinion.  If it is not, then the
25   ALJ must specify how much, if any, weight is given to the

1    treating source's opinion, applying several factors that have

2    been -- that are included in the regulations and also in the

3    Second Circuit they're referred to as the *Burgess* factors,

4    referenced in *Burgess v. Astrue*, 537 F.3d 117 at 128.  Among

5    the factors to be considered are the length of the treatment

6    relationship and the frequency of the examination, the nature

7    and extent of the treatment relationship, the evidence

8    supporting the treating provider's opinion, the degree of

9    consistency between the opinion and the record as a whole,

10   whether the opinion is given by a specialist, and other

11   evidence that has been brought to the attention of the ALJ.

12   The Second Circuit has noted that when an ALJ fails to

13   explicitly consider the *Burgess* factors, remand is not

14   necessarily required if a careful review of the record

15   reveals that the treating source rule was not violated.

16           In this case, the -- first with regards to

17   Dr. Freeman, Dr. Freeman's opinions are treated at page 25 of

18   the administrative transcript and although it is only treated

19   in a paragraph, the -- Dr. Freeman of course limited, at

20   pages 329 and 330, limited plaintiff to standing and walking

21   for less than one hours out of an eight-hour day, something

22   that it's not -- the handwriting is not clear and the

23   administrative law judge made a mistake and thought that that

24   was four hours in an eight-hour workday but nonetheless

25   rejected the limitation.  Dr. Freeman also opined that

1    plaintiff would be off task between 20 and 33 percent of the

2    day based upon the chronic foot pain.  The administrative law

3    judge again at page 25 rejected that opinion and gave a -- an

4    explanation including the lack of subjective complaints, the

5    lack of documented diagnostic testing, and although the

6    *Burgess* factors are less than adequately outlined in the --

7    in that one paragraph, I conclude the treating source rule is

8    not violated and that a careful review of the record as a

9    whole reflects that the treating source rule was not

10   violated.

11        Dr. Shah is a little bit different situation.

12   Dr. Shah issued a medical source statement on May 9, 2018 at

13   pages 468 and 469 of the administrative transcript finding

14   marked limitations in several areas, including maintain

15   regular attendance without interruptions from psychological

16   symptoms, performing activities within a schedule regarding

17   being punctual and performing at a consistent pace, ability

18   to interact appropriately with the general public, accept

19   instructions and respond appropriately to criticism from

20   supervisors, ability to respond appropriately to ordinary

21   stressors in a work setting with simple tasks, and opined

22   that plaintiff would be off task 20 to 33 percent of the day

23   and absent three days or more per month.  Dr. Shah's opinions

24   are discussed by the administrative law judge at several

25   points, 19 and 20 of the administrative transcript, page 23

1    of the administrative transcript, and again, page 24.

2    Pages 19 and 20 and page 24 seem to indicate the weight given

3    and the reasons for the weight being given.  I agree with the

4    Commissioner that the speculation as to motives for Dr. Shah

5    to exaggerate plaintiff's limitations being that there was a

6    Social Security Disability claim pending is an appropriate

7    consideration but it was not by any means the appropriate --

8    the only reason cited for rejecting Dr. Shah's opinions.  I

9    do note parenthetically that Dr. Shah, a review of his notes

10   at Exhibits 4F and 8F make it abundantly clear that he was

11   well aware of the pendency of the disability application

12   but -- and I also agree with plaintiff and courts that have

13   noted that in mental health cases, the opinions of treating

14   psychiatrists or psychologists with a longitudinal view are

15   important.  The Second Circuit noted that in *Ferraro v. Saul*,

16   2020 WL 1189399.  But the Second Circuit also in *Ferraro*

17   noted that check-box forms are not always reliable and are

18   somewhat marginally useful.  I also agree that psychiatric

19   symptoms can wax and wane.

20        This is perhaps a close case but I think it is

21   distinguishable from both *Stacey* and *Estrella*.  In *Estrella*,

22   the Second Circuit noted that the administrative law judge

23   had referenced only two positive treatment notes to support

24   rejection of the treating psychiatrist opinions.  The Second

25   Circuit noted that there were many others that were not so

1    promising or positive.  In *Stacey*, the Second Circuit noted

2    that the administrative law judge did not rely on or even

3    refer to any of the mental status evaluations in rejecting

4    the doctor's opinion on the issue of the ability to

5    concentrate which was a key issue in that case.

6          The -- it is obviously for the administrative law

7    judge to weigh medical evidence and resolve inconsistencies.

8    Here, the administrative law judge explained the treatment of

9    Dr. Shah.  I think that, between the three excerpts that I

10   cited, the *Burgess* factors have been considered.  He was

11   referred to as a psychiatrist, he was referred to as treating

12   source, many of his notes were referenced.  It was also,

13   supported the opinions, the rejection of Dr. Shah's opinions

14   by the opinions of Dr. Chapman, an agency consultant and an

15   expert, qualified expert in the field of Social Security.  I

16   reviewed the treatment notes of Dr. Shah and specifically 4F

17   and 8F exhibits, and I agree with the Commissioner that they

18   portray a much different view of plaintiff who reported

19   symptoms, the improvement with treatment, improvement with

20   medication.  At page 370, she's better and has come a long

21   way; 372, described as stable; 382, described as being in a

22   good mood, multiple denials of suicidal or homicidal

23   ideations, references to being alert times three, good

24   attention, good concentration.

25          So in my view, a searching review of the record

1   reflects that even if the treating source rule was violated,

2   the reasons for rejection of the opinion were stated and

3   supported by substantial evidence.  I agree with the

4   Commissioner that this is a case that is similar to and

5   supported by Judge Dancks' decision in *Michelle M. v.*

6   *Commissioner of Social Security*, 2020 WL 495170 from the

7   Northern District of New York, January 30, 2020.

8           In terms of the reliance on the opinions of

9   Dr. Chapman, partial reliance, Dr. Chapman issued a medical

10  source statement that found that plaintiff retains the

11  capacity to perform the basic mental demands of unskilled

12  work, that's at page 76.  Dr. Chapman found that plaintiff's

13  ability to perform activities within a schedule, maintain

14  regular attendance, and be punctual within customary

15  tolerances was not significantly limited.  He also found that

16  the ability to sustain an ordinary routine without special

17  supervision was not significantly limited.  He did find that

18  the ability to interact appropriately with the general public

19  was moderately limited, the ability to accept instructions

20  and respond appropriately to criticisms from supervisors was

21  moderately limited, and the ability to respond appropriately

22  to changes in the work setting was moderately limited.  In my

23  view the administrative law judge explained why those

24  findings were rejected based on medical evidence, Dr. Shah's

25  notes, plaintiff's activities of daily living, and that is

1    supported by substantial evidence.

2           Turning to the -- turning to the physical RFC, the

3    administrative law judge discussed reasons for rejecting

4    Dr. Freeman's opinions and we discussed that.  The

5    administrative law judge addressed the lack of evidence of

6    atrophy, mostly normal physical exams, the findings of

7    Dr. Jenouri and his examination, normal EMG findings, the

8    fact that plaintiff underwent no treatment for peripheral

9    neuropathy, activities of daily living, the normal x-ray of

10   plaintiff's left foot, the lack of evidence of any reduced

11   range of motion, sensory loss or motor loss.  The record in

12   my view contains sufficient evidence to assess plaintiff's

13   RFC as a whole, and that the RFC, the physical components of

14   the RFC is supported by substantial evidence, including but

15   not limited to portions of Dr. Jenouri's opinions and

16   findings as well as plaintiff's activities of daily living

17   and the evidence which I just recited.  In connection with

18   physical I find that the plaintiff failed to carry her burden

19   of showing greater limitations as it is her burden under

20   *Poupore*, and that this is merely a request to have the court

21   reweigh evidence.

22           And finally, I find that the step five

23   determination was proper, the residual functional capacity

24   was supported by substantial evidence.  The vocational expert

25   was posed a hypothetical which tracked the RFC finding, and

1    the Commissioner therefore carried his burden at step five,

2    relying on the testimony of the vocational expert.

3           In conclusion, I believe that correct legal

4    principles were applied and that substantial evidence

5    supports the Commissioner's determination.  I will therefore

6    grant judgment on the pleadings to the defendant and order

7    dismissal of plaintiff's complaint.  Thank you once again,

8    I've enjoyed working with both of you and I hope you stay

9    safe in these interesting times.

10          MR. GORTON:  Thank you, your Honor.

11          MR. MAKAWA:  Thank you, your Honor.

12             (Proceedings Adjourned, 11:51 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                        Dated this 24th day of June, 2020.

17

18

19                        /S/ JODI L. HIBBARD
                          _____

20                        JODI L. HIBBARD, RPR, CRR, CSR
                          Official U.S. Court Reporter

21

22

23

24

25